Dear Senator Russell:
This letter is in response to your questions asking:
 1) When a county overestimates its level of assessed valuation and sets levies on that anticipated valuation, is it lawful for political subdivisions to increase their tax levies to reflect the true valuation, thus producing substantially the same amount of tax revenue . . . [in] the previous year as allowed in section 137.073, RSMo?
 2) Does the correction of errors in an estimated assessed valuation level constitute a "general reassessment" within the meaning of subdivision (1) of subsection 1 of section 137.073, RSMo, and if so, does the general reassessment thereby permit an upward revision of levies to reflect the true valuation and produce substantially the same amount of tax revenue as the previous year allowed in section 137.073, RSMo?
Our understanding is that a county installed a new computer system to aid with the general reassessment of property in 1985. Because "final" assessed valuation figures were not available prior to the 1985 tax-rate-setting deadlines, preliminary assessed valuation figures (which are referred to as "estimates" in your question) were used in calculating the tax rate rollback. These preliminary figures were found to contain substantial errors, which resulted in an overestimation of the county's assessed valuation of millions of dollars. For purposes of this opinion, we will assume that the preliminary assessed valuation figures of the county in question was one hundred million dollars ($100,000,000.00). The 1985 tax rate rollback calculated upon that assessed valuation was forty-four cents ($.44) per one hundred dollars ($100.00) assessed valuation. The correct assessed valuation of the county amounted to eighty-seven million dollars ($87,000,000.00). If the correct assessed valuation would have been used, assume that the tax rate rollback would have been forty-six cents ($.46) per one hundred dollars ($100.00) assessed valuation.
 I.
In essence, your first question asks if the "correct" tax rate of forty-six cents ($.46) can be substituted for the "incorrect" tax rate of forty-four cents ($.44), which was certified to be correct under Section 137.073.8, RSMo Supp. 1985. See also Section 137.290, RSMo 1978. We find no specific statutory procedure authorizing a political subdivision to correct the certification of its tax rate. While we find no statutory authorization for such change, the countymay have an inherent right to correct is tax rates, even after the deadlines for setting tax rates. See Sections67.110, RSMo Supp. 1984 (setting a September 1 tax-rate-setting deadline for political subdivisions other than counties), and 137.055, RSMo 1978 (setting a September 20 tax-rate-setting deadline for counties).
Section 137.073.6(1), RSMo Supp. 1985, provides in part: "In all political subdivisions except school districts, the tax rate ceiling established pursuant to this section shall not be exceeded in the year of the tax rate reduction or thereafter unless a higher tax rate is approved by a vote of the people. . . ." See also Section 137.073.7, RSMo Supp. 1985 (dealing with school districts). Section 137.073(4), RSMo Supp. 1985, defines the term "tax rate ceiling" as "a tax rate as reduced by the taxing authority to comply with the provisionsof this section or when a court has determined the taxrate reduction. This is the maximum tax rate that may be levied in the year of tax rate reduction and in subsequent years, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section;". (Emphasis added.)
One can argue that the tax rate ceiling for the county in question is not the certified forty-four cent ($.44) levy but the forty-six cent ($.46) levy, because compliance with the provisions of Section 137.073, RSMo Supp. 1985, would have yielded a forty-six cent ($.46) levy.
Accordingly, we conclude that plausible arguments can be made that the county in question could raise its general operating levy from forty-four cents ($.44) to forty-six cents ($.46); we recommend that if the county wishes to pursue this course of action, it should file a declaratory judgment action praying for the court to declare its right to increase its levy.
 II.
The first part of the second question asks if the correction of errors in an estimated assessed valuation level can constitute a "general reassessment", as that term is defined in Section 137.073.1(1), RSMo Supp. 1985. We understand that the type of errors you are primarily concerned with are mathematical and caused by the introduction of a new computer system.
Section 137.073.1(1), RSMo Supp. 1985, states:
 1. As used in this section, the following terms mean:
 (1) "General reassessment", changes in value, entered in the assessor's books, of a substantial portion of the parcels of real property within a county resulting wholly or partly from reappraisal of value or other actions of the assessor or county equalization body or ordered by the state tax commission or any court;
This definition of "general reassessment" contains the following elements: (1) Changes in value, entered in the assessor's books, (2) of a substantial portion of the parcels of real property within a county (3) resulting wholly or partly from reappraisal of value or other actions of the assessor or county equalization body or ordered by the state tax commission or any court.
We believe that the correction of 1985 computer errors to arrive at a corrected 1985 assessed valuation is not a change in 1986 values. The first element is missing.
Whether the computer errors are extensive enough to affect a substantial portion of the parcels of real property within a county is a factual matter which cannot be determined here.
Finally, we do not believe the correction of computer errors is a reappraisal of value or other action of the enumerated persons.
As we have determined that the correction of computer errors is not a "general reassessment" for purposes of Section137.073.1(1), RSMo Supp. 1985, we do not need to answer the second part of your second question.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General